IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRIAN FARABEE, | ) |
| | ) |
|     Plaintiff | ) Civil Action No. 7:16-CV-325 |
| | ) |
| v. | ) |
| | ) |
| HAROLD CLARKE, et al., | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
|     Defendants | ) |

## MEMORANDUM OPINION

Brian Farabee, a Virginia inmate proceeding pro se, brought this civil rights actions concerning treatment for his mental illness and conditions of confinement in several correctional institutions in this district between March 2016 and January 2017. Farabee's claims mirror those he brought in the Eastern District of Virginia in Farabee v. Yaratha, 801 F. App'x 97 (4th Cir. 2020), and in this court, Farabee v. Lee, No. 7:18cv425. In this case, as in each of those other cases, Farabee complains that he is not receiving Dialectical Behavior Treatment ("DBT"), and instead is forcibly medicated with antipsychotic drugs and kept in isolation. Defendants contend that Farabee is not a candidate for DBT, is housed to protect himself and others, and is medicated as medically necessary.

In a memorandum opinion entered on January 12, 2018,[1] the court granted in part and denied in part defendant's motion for summary judgment and directed the defendants to file another motion for summary judgment. Memorandum Opinion, ECF No. 99. Farabee

---

[1] The allegations and legal framework of this case are fully outlined in the court's earlier Memorandum Opinion. ECF No. 99.

subsequently moved for a preliminary injunction, as to which Magistrate Judge Pamela M. Sargent recommended denial following a hearing. Report and Recommendation, ECF No. 154. In a memorandum opinion entered on August 27, 2018, the court adopted Judge Sargent's report and recommendation and overruled Farabee's objections to the denial of a preliminary injunction. Memorandum Opinion, ECF No. 179. Defendants filed a supplemental motion for summary judgment and the magistrate judge filed a Report and Recommendation on March 15, 2019, recommending that summary judgment be entered for defendants on plaintiff Farabee's claims. ECF No. 188. Farabee has filed objections to the report and this matter is now ripe for the court's consideration.[2]

### I.

**A. Factual Background.**

The facts of this case are set forth at length in both the prior Memorandum Opinions and Reports and Recommendations issued in this case. In particular, the Report and Recommendation entered by the Magistrate Judge on March 15, 2019 exhaustively addressed the facts related to Farabee's claims and need not be repeated here. See ECF No. 188.

However, to summarize, Farabee suffers from mental illnesses, including Borderline Personality Disorder. In 1999 he was found not guilty by reason of insanity after setting a fire inside Eastern State Hospital in a suicide attempt. Farabee currently is incarcerated in the Virginia Department of Corrections ("VDOC") for violation of the terms of probation following a 2000 conviction for malicious wounding while civilly committed in the custody of

---

[2] In the meantime, the court addressed the same claims raised by Farabee in Farabee v. Lee, No. 7:18cv425. See Report and Recommendation, ECF NO. 86, and Memorandum Opinion, ECF No. 95.

Virginia's Department of Behavioral Health and Developmental Services. While incarcerated, Farabee was found guilty of committing another crime in 2004, and of violating the terms of his probation in 2015. Farabee currently is incarcerated in the VDOC based on his most recent conviction.

Farabee's allegations concern his period of incarceration at three southwest Virginia VDOC facilities in 2016. While at Wallens Ridge State Prison ("Wallens Ridge"), Farabee was placed in five-point restraints intermittently between March 22, 2016 and April 5, 2016 because of self-harming threats and behaviors. Staff at Wallens Ridge believed they were unable to treat Farabee because of his acts and threats of self-harm and his refusal of treatment. Staff sought and was granted permission by a state court to transfer Farabee to Marion Correctional Treatment Center ("MCTC"), VDOC's psychiatric facility for adult male inmates, for "as needed" involuntary "medical and/or mental health care" for up to 180 days.

Farabee alleges that while he was at Wallens Ridge, defendant Dr. Meredith Cary, VDOC Chief Psychiatrist, threatened to forcibly drug him even though he made clear to her that he did not want to be drugged. After he was transferred to MCTC, Farabee claims that Dr. Cary directed the nursing staff to forcibly medicate him and keep him in isolation. Farabee was forcibly injected with Haldol four times in April 2016 and with another narcotic tranquilizer one time in April 2016. Farabee alleges that the medication and isolation caused him severe side effects, including fear, humiliation, pain, soreness, bleeding, dry mouth, dizziness, tremors, an inability to sit still, blurred vision, muscle aches, and drowsiness.

Farabee was transferred to Red Onion State Prison ("Red Onion") on June 22, 2016, where he began refusing treatment, harming himself, and threatening to harm himself. He

tried to open wounds by cutting and biting himself and threatened to purposefully infect the wounds.

Farabee was transferred back to MCTC on September 23, 2016 for acute treatment to stabilize his behavior. He remained noncompliant with treatment at MCTC and was found guilty on several disciplinary charges while at MCTC.

### B. Procedural Background.

Farabee filed a complaint in this matter on July 1, 2016 and filed a second amended complaint on February 9, 2017, alleging § 1983 causes of action against various VDOC employees. The causes of action stem from the mental health treatment he received while incarcerated in VDOC facilities. ECF No. 71. Defendants Harold W. Clarke, Director of the VDOC, A. David Robinson, VDOC Chief of Correctional Operations, Dr. Cary, Dr. James A. Lee, Chief Psychiatrist at MCTC, Eric Madsen, VDOC psychologist, and Dara Robichaux-Watson, Warden at MCTC, and VDOC filed a motion for summary judgment on April 7, 2017 (ECF Nos. 76, 77).

On January 12, 2018, the district court entered a memorandum opinion and order granting in part and denying in part the motion for summary judgment. ECF Nos. 99, 100. Farabee was allowed to proceed on (1) his due process and deliberate indifference claims regarding forced administration of antipsychotic drugs by defendants Cary and Lee; (2) his deliberate indifference claims against defendants Madsen, Cary, Lee, and Robichaux-Watson related to his placement in isolating conditions of confinement at Wallens Ridge, Red Onion, and MCTC; and (3) his retaliation claim against defendants Lee and Robichaux-Watson. Also, Farabee's official capacity claims against Clarke and Robinson about the availability of

treatments, programs, and activities for inmates previously deemed "not guilty by reason of insanity" remain pending. All the other claims brought by Farabee were dismissed. The order directed the parties to complete discovery and defendants were directed to file motions for summary judgment supported by affidavit(s) on the remaining claims.

In her subsequently issued exhaustive Report and Recommendation, Judge Sargent recommended dismissal of Farabee's remaining claims, finding no genuine issue of material fact that defendants were deliberately indifferent to Farabee's serious mental health needs; no deliberate indifference to a serious risk of harm caused by Farabee's conditions of confinement; no basis for the claim of retaliation and that defendants were entitled to qualified immunity.

## II.

A district court must review de novo any part of a report and recommendation to which a party properly objects. 28 U.S.C. § 636(b)(1)(C); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The district court's reasoning does not need to be elaborate or lengthy, but it must provide a specific rationale that permits meaningful appellate review. See, e.g., United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009). A party must object "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Fourth Circuit explained that:

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues

5

>that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

De novo review is not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Orpiano, 687 F.2d at 47. An objection that repeats arguments raised before a magistrate judge is deemed a general objection to the entire the report and recommendation, which is the same as a failure to object. Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008). A district court is also not required to de novo review an issue to which no party properly objects. See, e.g., Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

A district court reviews for clear error any part of a report and recommendation not properly objected to. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Clear error means that a court, after "reviewing . . . the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see FTC v. Ross, 743 F.3d 886, 894 (4th Cir. 2014) (noting a factual finding based on the resolution of conflicting evidence is entitled to deference under the clear error standard).

### III.

#### A. Failure to Provide Dialectical Behavioral Treatment and Forced Medication Claims.

Over the course of several lawsuits, Farabee has contended that he is constitutionally entitled to certain mental health treatment referred to as Dialectical Behavioral Treatment, or

DBT, and that instead of receiving this treatment, he has been isolated, restrained and forcibly medicated with antipsychotic medications against his will. In this case, as to defendants VDOC Director Clarke, VDOC Chief of Correctional Operations Robinson or Warden Robichaux-Watson, the Report and Recommendation concluded that Farabee presented no evidence that they had any personal involvement in the treatment provided him.  Each of these defendants provided statements that he or she made no decisions regarding Farabee's medical or mental health treatment and/or relied on the medical and mental health professionals regarding appropriate treatment for inmates. As such, there was no basis for any liability against them. In his objection, Farabee provides no evidence that Clarke, Robinson and Watson had any involvement in his medical care or were deliberately indifferent to any serious medical needs. As such, these objections as to the dismissal of these defendants from claims concerning his medical care are **OVERRULED**.

      The claim against defendant Eric Madsen, Chief Psychologist for the VDOC, concerns Farabee's housing assignments at Wallens Ridge and Red Onion state prisons. The Report and Recommendation concluded that each of these prisons had qualified mental health professionals on staff who were familiar with Farabee and were capable of addressing his treatment needs. In his objections, Farabee complains of Madsen's involvement in transferring him to the Wallens Ridge and Red Onion facilities, raising conditions of confinement concerns involving solitary confinement and institutional safety, rather than medical claims. Because there is no evidence that defendant Madsen was deliberately indifferent to Farabee's medical needs, or otherwise responsible for or any care or treatment of Farabee, his objection is **OVERRULED**.

With regard to the claims against psychiatrists Cary and Lee, Farabee takes issue with his treatment, claiming that he has been denied DBT and was forcibly medicated with antipsychotic medications over his objections. The Report and Recommendation found it to be undisputed that both Drs. Cary and Lee ordered that Farabee be forcibly medicated. However, the Report and Recommendation also found it to be undisputed that Farabee suffers from borderline personality disorder and has a long history of harming himself while in VDOC custody. Dr. Cary stated that Farabee was forcibly medicated only when necessary to prevent his harming himself, and Dr. Lee stated that he had ordered the use of Haldol on Farabee on an as-needed basis for agitation and/or psychosis.

On the issue of therapeutic choices and Farabee's eligibility for DBT, this very same issue was decided by the court in a case raising the same claims. Memorandum Opinion, ECF No. 95, at 12-14, Farabee v. Lee, et al, No. 7:18cv425 (May 28, 2020). There the court stated:

> With regard to Farabee's objection to the Magistrate Judge's determination that DBT was "desirable treatment" and that his failure to receive it was nothing more than a disagreement between a patient and treatment provider, the court overrules Farabee's objection. DBT is a group therapy that emphasizes behavioral skills training and teaching the patient skills to regulate intense emotional states and diminish self-destructive behaviors. To make effective use of DBT, patients need to demonstrate a reasonable degree of motivation for change and a reasonable degree of impulse control. Dr. J. Lee attests that Farabee did not meet these prerequisites while housed in the acute care unit at Marion. In support of his objection, Farabee argues that he provided evidence of his "need for DBT" in the form of a letter from Dr. Kevin McWilliams. However, Dr. McWilliams did not opine that DBT was medically necessary for Farabee or that the specific course of treatment provided by these defendants was inappropriate. Instead, Dr. McWilliams stated that DBT is the "treatment of choice" for borderline personality disorder, and "especially for [patients] who willfully desire and are motivated to pursue such treatment." An inmate is not entitled to

> unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Jasper v. Mullins, No. 7:07cv00497, 2007 U.S. Dist. LEXIS 82959, at *7, 2007 WL 3339605, at *2 (W.D. Va. Nov. 8, 2007). To prove that medical care an inmate received violated his constitutional rights, the inmate must show that the defendants acted with "deliberate indifference to an inmate's serious medical needs." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). "[O]fficials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs." Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015). Deliberate indifference requires proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements between doctor and patient about the prisoner's treatment plan. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Farabee has not demonstrated that DBT is medically necessary for his treatment, and, having reviewed relevant portions of the record de novo, the court agrees with the Magistrate Judge's determination that while Farabee may disagree with the treatment prescribed, he has not shown that the defendants were deliberately indifferent to his serious medical needs by failing to provide him with DBT. Accordingly, the court will overrule Farabee's objection and grant the defendants' motion for summary judgment as to this claim.

The same is true in this case. Indeed, as the Report and Recommendation related, both Drs. Cary and Lee stated that Farabee's behavior and lack of stability were preventing him from participating in more programming and therapy options. Judge Sargent concluded:

> Based on the above evidence, I find that there is no genuine dispute of material fact and Madsen, Dr. Lee and Dr. Cary were not deliberately indifferent to Farabee's serious mental health needs. There is no doubt that Farabee suffers from a serious mental illness. Nonetheless, Farabee has produced no medical evidence that his treatment while incarcerated has not been appropriate under the circumstances. While McWilliams and Dr. Torres recommend DBT to treat Farabee's borderline personality disorder, neither has reviewed Dr. Lee's or Dr. Cary's actions. Nor has either rendered an opinion that Dr. Lee's or Dr. Cary's actions were inappropriate under the circumstances. As stated

9

> above, a disagreement between an inmate and medical personnel over treatment does not rise to the level of a constitutional claim.

Report and Recommendation, ECF No. 188, at 93. In his objections, Farabee offers no evidence to dispute the medical judgment made by defendant physicians that DBT is not an appropriate treatment. As such, his objection regarding dismissal of this claim suggesting that DBT is constitutionally required is **OVERRULED**.

Persons in state custody have a due process interest in not being forcibly given antipsychotic medication. See Johnson v. Silvers, 742 F.2d 823, 825 (4th Cir. 1984); Washington v. Harper, 494 U.S. 210, 221-22 (1990). Indeed, as the Fourth Circuit recently observed while vacating dismissal of Farabee's state habeas petition brought pursuant to 28 U.S.C. § 2254,

> Due process affords Farabee "a right to adequate food, shelter, clothing, and *medical care* . . [and to] safety and freedom from bodily restraint." Youngberg v. Romeo, 457 U.S. 307, 315-18 (1982) (emphasis added). Neither involuntary commitment nor "lawful confinement, even for penal purposes," terminate these rights. Id. at 315; see also Thomas S. v. Morrow, 781 F.2d 367, 374 (4 th Cir. 1986) (extending these rights to those sentenced to non-institutional specialized adult foster care and group home facilities). Under certain circumstances, a failure to meet these rights "may comprise a due process . . . violation because the state-imposed circumstance of confinement prevents such individuals from helping themselves." Davis v. Rennie, 264 F. 3d 86, 8 (1st Cir. 2001).

Farabee v. Clarke, 967 F.3d 380, 394 (4th Cir. 2020) (emphasis in original). To state a viable claim that he was unlawfully forcibly medicated, a plaintiff is generally required to show that the defendant acted without professional judgment. See Patten v. Nichols, 274 F.3d 829, 843-46 (4th Cir. 2001). On the issue of the claimed forced medication, and consistent with the Fourth Circuit's ruling in Farabee v. Yaratha, 801 F. App'x 97 (4th Cir. 2020), Farabee has not

met his burden of demonstrating that the defendants, in making the decision to administer antipsychotic medications to Farabee, "didn't exercise professional judgment in administering the drugs." Id. at 108. As such, at this time, Farabee has failed to meet his burden of proof that the medications were given outside the realm of professional judgment. However, as the court found in Farabee v. Lee, No. 7:18cv00425, the court will allow a brief period of additional discovery to see whether videotapes exist of the instances when Farabee was forcibly medicated against his will during the period covered by this lawsuit – March 2016 to January, 2017. If such videotapes exist, the defendants are directed to file them under seal and along with an authenticating affidavit for in camera review. If no videotapes exist of instances in which medication was administered to Farabee against his will during this period, defendants are directed to file an affidavit to that effect.

In so doing, the court is deliberately mindful of the Fourth Circuit's two recent panel decisions concerning Farabee. Considering the pleadings in Farabee v. Clarke, the Fourth Circuit noted Farabee's "difficult relationship" with the VDOC. Id., 967 F.3d at 384. Indeed, the court noted that "[u]nder the circumstances here, Virginia, by committing Farabee, undertook the responsibility to provide him with adequate medical care but failed to do so, instead opting to incarcerate and reincarcerate him for the past two decades." Id. at 394. At the same time, considering the evidence adduced at the bench trial in Farabee v. Yaratha, raising parallel allegations to those asserted herein, the Fourth Circuit affirmed the trial court's judgment as to Farabee's forced medication claims, noting Farabee's failure to meet his burden of proving that his treating psychiatrists acted without professional judgment. Id., 801 F. App'x at 108. The same is true here. Absent evidence that these medications were administered

11

without the exercise of professional judgment, Farabee's forced medication claims are subject to dismissal. At this point, no evidence has been produced that these medications were administered in the absence of professional judgment by his treating psychiatrists. Farabee claims that the administration of his medication has been videotaped. Authorizing a brief period of discovery to ascertain whether videotape evidence exists concerning the administration of antipsychotic medications to Farabee is designed to get to the bottom of this question.

Accordingly, the court agrees with and adopts the Report and Recommendation denying Farabee's claim that he has been unconstitutionally excluded from DBT treatment. The court **OVERRULES** Farabee's objections on the issue of access to DBT treatment. The court **TAKES UNDER ADVISEMENT** the issue concerning Farabee's forced medication for a period of sixty (60) days. Further, because Farabee's claims of forced medication are identical to those raised in Farabee v. Lee, No. 7:18cv425, that case and this case are **CONSOLIDATED** for all purposes.[3]

### B. Conditions of Confinement Claims.

Farabee complains as well about his conditions of confinement, asserting that being kept in segregation on safety precautions for lengthy periods of time violates the Eighth Amendment. In order to prevail on a claim of a violation of the Eighth Amendment, a prisoner "must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." In re Long Term Admin.

---

[3] In that regard, counsel for Farabee in No. 7:18cv425 have agreed to accept representation of Farabee in this case pending his approval. Given this development, unless impeded by the COVID-19 pandemic, Judge Sargent is asked to bring these related cases to resolution in the next few months.

Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). In contravention of Farabee's claim, the Report and Recommendation noted that the evidence presented indicated that Farabee harmed himself when removed from segregation, rather than suffering an exacerbation of self-harm symptoms when isolated. Report and Recommendation, ECF No. 188, at 95-96. The Report and Recommendation also concluded that there was no evidence that defendants recognized that Farabee's conditions of confinement posed a substantial risk of serious harm. For example, Dr. Cary stated that restrictive housing was the only housing at MCTC that allowed staff to closely monitor an offender's behavior to ensure that he did not have access to items that could be used for self-harm. Id. at 96. As the Report and Recommendation noted:

> Dr. Lee stated that the goal of treating Farabee in segregation was not to isolate him from others, but rather to safely manage his disruptive and high-risk behavior. Dr. Lee also stated that, since September 2016, Farabee's treatment plan had focused on providing him with a safe and secure environment where his impulsive and aggressive behavior could be managed without injury to himself or others. Dr. Lee stated that Farabee had never exhibited that he was emotionally or behaviorally stable enough to participate in group therapy. The psychologist Lee opined in January 2018 that Farabee 'has proven incapable of residing in a non-mental health institution and requires constant restrictions or other interventions to prevent self-harm.' According to Madsen's affidavit, Farabee's placements at MCTC, Wallens Ridge and Red Onion, have been appropriate based on his security level and history of self-injurious behavior. Warden Watson has stated that Farabee has been held in restrictive housing while at MCTC for mental health evaluation periods and because of repeated acts of self-injurious behavior, threats of harm to others, refusal to contract for his safety and consistent disruptive behaviors.

Id. at 96-97. Based on her exhaustive review of the evidence, Judge Sargent concluded that there was no genuine dispute of material fact on Farabee's Eighth Amendment conditions of confinement claim and recommended dismissal.

Farabee objects to the recommended dismissal of his Eighth Amendment claim. Again, however, he offers no evidence to suggest a genuine issue material fact exists. Rather, he simply disagrees with the conclusion reached by the magistrate judge. As the court noted on this issue in Farabee v. Lee, No. 7:18cv00425, at *12, Farabee suffers serious mental illness and "has a long history of self-harm, threatening to self-harm and aggression towards others. . . . The court . . . agrees with the Magistrate Judge's determination that the other conditions, such as security restraints and single cell housing assignments, are necessary to protect Farabee and others from his own behavior. Based on this, the court cannot conclude that the defendants subjected Farabee to cruel and unusual living conditions." Accordingly, the court **OVERRULES** Farabee's objections on his conditions of confinement claim.

### C. Retaliation Claim.

Farabee claims that he has been retaliated against for filing this lawsuit by being kept in segregation housing. The Report and Recommendation found Farabee's claims of retaliation to be unsupported, noting that "there is no genuine dispute that other substantial reasons existed for him to be in segregation housing." Id. at 98. As such, Judge Sargent concluded that Farabee could not prove that he would not have been held in segregation but for the claimed retaliatory intent. Farabee objects to Judge Sargent's conclusion, stating that there were instances in which he was released from isolation before the suit was filed when he never harmed himself and that Dr. Lee lied about when he learned of the filing of this lawsuit.

Contrary to Farabee's speculative assertion of retaliation, the documentary evidence in this case fully supports defendants' position that Farabee's housing location at MCTC, Red Onion, or Wallen's Ridge, has been determined by his self-harming behavior. As there is no evidence beyond sheer speculation of retaliation, Farabee's objection is **OVERRULED** and the Report and Recommendation is fully adopted as to the retaliation claim.

### D. Programming Claim.

Finally, Farabee claims that VDOC Director Clarke and Chief of Correctional Operations Robinson have denied him programming for persons previously determined to be found not guilty by reason of insanity. While Farabee previously was institutionalized for that reason, he now is confined in the VDOC for crimes he committed. As such, Farabee is eligible for mental health treatment just as any other VDOC inmate and has access to core Mental Health Services. See Aff. of D. Malone, VDOC Chief of Mental Health Services, ECF No. 148-6. In his affidavit, Chief Malone catalogued the mental health services available to persons in VDOC custody and the VDOC Operating Procedures in place regarding the organization and administration of mental health services within the VDOC. Indeed, it is undisputed that Farabee has been transferred to MCTC for mental health treatment on repeated occasions and has received treatment. Although Farabee disagrees with the treatment options he has received, there is no basis for imputing respondeat superior liability on Director Clarke or Chief of Correctional Operations Robinson for the clinical decisions made regarding Farabee. As a result, defendants Clarke and Robinson are entitled to summary judgment on this claim.

## IV.

For these reasons, Judge Sargent's exhaustive and well-considered Report and Recommendation is **ADOPTED** and Farabee's claims are **DISMISSED** with one exception. The lone exception is that defendant Drs. Lee and Cary are **DIRECTED** to ascertain whether any videotapes exist of the claimed forced administration of antipsychotic medication to Farabee in 2016 and 2017 at MCTC, Red Onion or Wallens Ridge. If they exist, defendants are to provide them to the court within sixty (60) days for in camera review.[4] If no such videotapes exist, defendant Drs. Lee and Cary are **DIRECTED** to provide an affidavit to that effect. With this narrow caveat as to the sole remaining claim concerning forced medication, all of Farabee's remaining claims are **DISMISSED**.

An Order will be entered consistent with this opinion.

**ENTER**: This 19th day of October, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.10.19 17:04:10 -04'00'

_____

Michael F. Urbanski
Chief United States District Judge

---

[4] Should counsel for Farabee in No. 7:18cv425 enter an appearance in this case, any videotape evidence produced will be provided to his counsel.